**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORAD
Chief Judge Marcia S. Krieger**

**Civil Action No. 16-cv-01812-MSK-GPG**

**MELISSA KAY RENFANDT,**

    **Plaintiff,**

**v.**

**NEW YORK LIFE INSURANCE COMPANY, a New York Corporation authorized to do business in the State of Colorado as a Foreign Corporation,**

    **Defendant.**

___

**ORDER CERTIFYING QUESTION OF STATE LAW TO
THE COLORADO SUPREME COURT**
___

**THIS MATTER** comes before the Court *sua sponte* on a question of law arising from the Defendant New York Life Insurance Company's Motion to Dismiss **(# 15)** under Federal Rule of Civil Procedure 12(b)(6).

**FACTUAL AND PROCEDURAL BACKGROUND**

Mark Renfandt, the Plaintiff's husband, applied for a life insurance policy with Defendant New York Life Insurance Company ("New York Life"), naming Ms. Renfandt as the beneficiary. New York Life issued a Temporary Coverage Agreement ("Agreement") that insured Mr. Renfandt's life, effective while it considered his application. The Agreement contained a provision excluding coverage for "suicide … while sane or insane" ("Suicide Clause"). Mr. Renfandt died while his application was pending and the temporary Agreement was in effect.

On the day of his death, Mr. Renfandt celebrated with his employees after work. He became intoxicated and was given a ride home. Ms. Renfandt, who was getting ready for bed, heard him arrive, but when he did not come to bed after approximately thirty minutes, she went to check on him. She found him face down on the floor. She helped him off the floor and onto a couch and then went to bed. Later, she heard him go into the garage, where he kept edible marijuana. She again went to check on him and found him "sleepwalking, zombie-like, with a blank, glazed-over look in his eyes." Again she helped him to the couch and went back to bed. Later, he came into the couple's bedroom and took a handgun from a drawer. He did not speak and appeared to Ms. Renfandt to be sleepwalking. She arose to retrieve the gun from him, but before she could, the gun fired, shooting Mr. Renfandt in the head.

Ms. Renfandt filed a claim for benefits under the temporary Agreement. Citing the Suicide Clause, New York Life denied the claim.

Ms. Renfandt commenced this case against New York Life in the Colorado District Court in and for Garfield County, asserting claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) unjust enrichment. She alleges that the Suicide Clause's exception to coverage does not apply because Mr. Renfandt's death was not a "suicide." Rather, she alleges that the alcohol and drugs Mr. Renfandt had imbibed before the event rendered him unable to form suicidal intent.

New York Life timely removed the case to this Court (**# 1**) and also moved to dismiss (**# 15**) the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## ANALYSIS

The parties agree that Colorado law applies. New York Life does not directly dispute that the Complaint adequately alleges the existence of a contract, the Renfandts' performance of their

obligations under that contract, or the predicate fact that Mr. Renfandt died during the term of the Agreement.  Instead, it argues that it has not breached the Agreement's terms because the Agreement's Suicide Clause excludes coverage. The question before the Court is one of law—whether the Suicide Clause excludes coverage based on the facts alleged.

The Suicide Clause states:

There is no coverage provided under this Agreement: A. For suicide or intentionally self-inflicted injury of the proposed insureds, while sane or insane…

Ms. Renfandt argues that a person does not commit suicide unless he/she <u>intends</u> to kill himself/herself, and that the combination of drugs and alcohol prevented Mr. Renfandt from being capable of forming such an intent. New York Life argues that the term "suicide" must be read in harmony with the phrase "sane or insane." It maintains that the inclusion of the "sane or insane" language renders whether a decedent <u>intended</u> to kill himself/herself irrelevant.

New York Life is correct that the term "suicide" is not a singular term in the exclusion. Instead, it is part of the phrase "suicide, while sane or insane". The question is not what "suicide" might mean in a colloquial sense, but instead what "suicide, while sane or insane" was intended by the parties to mean in a legal context.  Ordinarily, the meaning of this phrase would be determined by Colorado law, but neither the parties nor the Court has located any Colorado authority directly on point.

Historically, throughout the United States, life insurance and accidental death policies excluded coverage for suicide without including the modifier "sane or insane." *See e.g. Accident Ins. Co. v. Crandal*, 120 U.S. 527 (1887); *Cooper v. Mass. Mut. Life Ins. Co.*, 102 Mass. 227 (1869); *Eastabrook v. Union Mut. Life Ins. Co.*, 54 Me. 224 (1866); *Breasted v. Farmers' Loan & Trust Co.*, 4 Hill 73 (N.Y. Sup. Ct. 1843). However, courts in the late 1800s began ruling that suicide exclusions did not apply when a legally insane person took his/her own life, as: (1)

he/she could not distinguish between right and wrong, (2) he/she could not understand the nature and consequences of his/her actions to the degree that he did not intend to commit suicide, or (3) an irresistible impulse compelled him to kill himself/herself. *See Life Ins. Co. v. Terry*, 82 U.S. 580, 590-91 (1872). In response, insurance companies began modifying their policies to exclude coverage for "suicide, sane or insane". *See Accident Ins. Co.*, 120 U.S. at 531-33; *Bigelow v. Berkshire Life Ins. Co.*, 93 U.S. 284, 286-88 (1876).

Outside of Colorado, the phrase "suicide, sane or insane" has since been interpreted in two different ways. *See* W.E. Shipley, Annotation, *Insurance: Construction of "sane or insane" provision of suicide exclusion*, 9 A.L.R.3d 1015 (1966). The majority[1] of jurisdictions interpret "suicide, sane or insane" as meaning that all acts of self-destruction constitute suicide, regardless of the decedent's ability to distinguish between right and wrong, whether the decedent intended to commit suicide, or whether the decedent was compelled to kill himself/herself by an irresistible impulse.

---

[1]Idaho, Illinois, Indiana, Iowa, Massachusetts, Missouri, Nebraska, New York, North Carolina, Texas, Pennsylvania, Tennessee, Vermont, Virginia, and Washington follow this interpretation. *Nielsen v. Provident Life & Acc. Ins. Co.*, 596 P.2d 95, 98-99 (Idaho 1979); *Seitzinger v. Modern Woodmen of Am.*, 68 N.E. 478, 481 (Ill. 1903); *Kunse v. Knights of the Modern Maccabees*, 90 N.E. 89, 90-91 (Ind. Ct. App. 1909); *Scarth v. Sec. Mut. Life Soc.*, 39 N.W. 658, 659-60 (Iowa 1888); *Moore v. N.W. Mut. Life Ins. Co.*, 78 N.E. 488, 473 (Mass. 1906); *Aufrichtig v. Columbian Nat. Life Ins. Co.*, 249 S.W. 912, 914 (Mo. 1923); *Scherar v. Prudential Ins. Co.*, 88 N.W. 687, 688 (Neb. 1902); *Franklin v. John Hancock Mut. Life Ins. Co.*, 80 N.E.2d 746, 748 (N.Y. 1948); *Spruill v. N.W. Mut. Life Ins. Co.*, 27 S.E. 39, 40 (N.C. 1897); *Aetna Life Ins. Co. v. McLaughlin*, 380 S.W.2d 101, 104 (Tex. 1964); *Tritshler v. Keystone Mut. Ben. Ass'n*, 36 A. 734, 734-35 (Pa. 1897); *Weber v. Guardian Life Ins. Co. of Am.*, 2 Tenn.App. 624, 632 (Ct. App. 1926); *Billings v. Accident Ins. Co.*, 24 A. 656, 657-58 (Vt. 1892); *Atkinson v. Life Ins. Co. of Va.*, 228 S.E.2d 117, 120-21 (Va. 1976); *Campbell v. Order of Wash.*, 102 P. 410, 412 (Wash. 1909).

The minority of jurisdictions[2] interpret the term differently. They see it as excluding coverage only where the decedent engages in self-destruction with the <u>intent</u> to kill himself/herself. They reason that an insane person who does not understand the nature and consequences of his/her actions cannot form suicidal intent.[3] In such situation, coverage is excluded. Under this reasoning, the nature of the insanity is the determining factor—does it prevent the decedent from knowing the nature and consequences of his/her actions?

The Colorado Supreme Court has not squarely addressed the meaning of the term "suicide, sane or insane" in the context of a life insurance policy.[4] During the early 1900's, it did address exclusions for suicide in the context of accidental death insurance policies. Under such policies, beneficiaries bore the burden to prove that an insured's death was caused by "external violent and accidental means," and death by suicide was excluded from coverage. *See Preferred Accident Ins. Co. v. Fielding*, 35 Colo. 19, 22 (1905). However, an exception was soon recognized when an insured committed suicide while insane. In 1925, the Court reasoned:

> In most murders committed by insane persons the perpetrator knows he is committing the act, knows that death will probably result, and expects and intends that it shall, nevertheless he may not be held accountable if afflicted with a mental

---

[2]California, Georgia, Kansas, Kentucky, Louisiana, Michigan, South Carolina, South Dakota, Utah, and Wisconsin follow this interpretation. *Searle v. Allstate Life Ins. Co.*, 696 P.2d 1308 (Cal. 1985); *Christensen v. New England Mut. Life Ins. Co.*, 30 S.E.2d 471 (Ga. 1944); *Muzenich v. Grand Carniolian Slovenian Catholic Union of U.S.*, 119 P.2d 504, 508-09 (Kan. 1941); *Inter-S. Life Ins. Co. v. Boyd*, 124 S.W. 333 (Ky. Ct. App. 1910); *Brignac v. Pac. Mut. Life Ins. Co.*, 36 So. 595, 596 (La. 1904); *Streeter v. W. Union Mut. Life & Acc. Soc.*, 31 N.W. 779, 780 (Mich. 1887); *Latimer v. Sovereign Camp Woodmen of the World*, 40 S.E. 155, 156 (S.C. 1901); *Bircher v. Modern Bhd. of Am.*, 126 N.W. 583, 583-84 (S.D. 1910); *MacKenzie v. Mut. Ben. Life Ins. Co.*, 528 P.2d 150, 150-51 (Utah 1974); *Cady v. Fidelity & Cas. Co. of N.Y.*, 113 N.W. 967, 967 (Wis. 1907).

[3]In contrast, a person who is insane because he/she does not know right from wrong or who was compelled by an irresistible impulse to kill himself/herself can form suicidal intent.

[4] However, at least three Colorado Supreme Court justices have advocated for the adoption of the majority rule. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 295 (Colo. 2005)(Kourlis, J. & Bender, J. dissenting); *Prudential Ins. Co. of Am. v. Cline*, 57 P.2d 1205, 1210 (Colo. 1936)(Bouck, J. dissenting).

> derangement which precludes any conception of the moral and legal aspects of the killing and permits him to undertake it with the same indifference he would undertake the killing of an insect. He is insane if so mentally diseased that he has no capacity to understand the nature of the act and no ability to distinguish between right and wrong as applied thereto; otherwise he is sane. Such is the insanity which, in most jurisdictions, including this, relieves from responsibility one who takes human life. … [T]he absence of responsibility … makes self-destruction an accident.

*London Guar. & Acc. Co. v. Officer*, 242 P. 989, 991 (Colo. 1925). Based on this, the court consistently held that a beneficiary of an accidental death policy who could prove that the insured committed suicide while insane satisfied the burden of proving that the insured's death was caused by external violent and accidental means. *McCowan v. Equitable Life Assur. Soc. of the U.S.*, 179 P.2d 275, 277 (Colo. 1947); *New York Life Ins. Co. v. West*, 82 P.2d 754, 755 (Colo. 1938); *N.A. Acc. Ins. Co. v. Cavaleri*, 58 P.2d 756, 757 (Colo. 1936); *Capital Life Ins. Co. v. Di Iullo*, 53 P.2d 1183, 1184 (Colo. 1935); *Mass. Protective Ass'n, Inc. v. Daugherty*, 288 P. 888, 888 (Colo. 1930).

Colorado insurance companies soon began adopting an exclusion for death due to "suicide, sane or insane", or other functionally identical language, into their life insurance and accidental death policies. *See Officer v. London Guar. & Accident Co.*, 220 P. 499, 499 (Colo. 1923). But, unlike other jurisdictions, Colorado also responded by enacting a statute that addressed suicide exclusions in life insurance policies.[5] In 1903, the Colorado General Assembly enacted what is now Colorado Revised Statutes § 10-7-109, which prohibited life insurance policies from excluding coverage for suicide "whether [the] policy holder was sane or insane" after the first policy year. *Head Camp, Pac. Juris., Woodmen of the World v. Sloss*, 112 P.49, 50 (Colo. 1910).

---

[5]In 1923, the Colorado Supreme Court held that the statute applied both to life insurance and accidental death policies. *Officer*, 220 P. at 500. However, the current version of the statute states that it does not apply to accidental death policies.

At the time Mr. Renfandt and New York Life executed the Agreement, this statute provided:

> The suicide of a policyholder after the first policy year of any life insurance policy issued by any life insurance company doing business in this state shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policyholder was sane or insane. Nothing in this section is intended or shall be construed to apply to any accident insurance policy insuring against accidental death or death by accidental means or to those parts or provisions of any life insurance policy insuring specifically against accidental death or death by accidental means.

From this statute, it appears that Colorado's General Assembly has addressed suicide exemptions in life insurance policies that have been in effect for one year or more, but not those that have been in effect for <u>less</u> than one year. The Renfandts' policy would not be controlled by C.R.S. § 10-7-109.

The Colorado Supreme Court has addressed exemptions for "suicide while insane" in accidental death policies. *New York Life Ins. Co. v. West¸* 82 P.2d 754 (Colo. 1938); *Capitol Life Ins. Co.*, 53 P.2d at 1184-86; *London Guar. & Acc. Co.*, 242 P. at 991; *Officer*, 220 P. at 499-500; *Preferred Accident Ins. Co. v. Fielding*, 35 Colo. 19, 22 (1905). In accidental death policies, the court has interpreted "insanity"[6] to mean either (1) the inability to understand the physical nature and consequences of one's actions (which would include the inability to intend to commit suicide) or (2) the inability to distinguish between right and wrong. *London Guar. &*

---

[6] Ms. Renfandt raises an additional issue as to the definition of insanity. Citing to C.R.S. §§ 16-8-101, 18-1-802 & 18-1-804, she argues that intoxication and insanity are not synonymous and that intoxication, not insanity, rendered Mr. Renfandt incapable of intending to commit suicide. However, it is not necessary to resolve this issue. If Colorado follows the majority rule, the Suicide Clause would exclude coverage for all acts of self-destruction even if Mr. Renfandt did not intent to commit suicide, and thus, whether he intended to commit suicide is irrelevant regardless of whether he was sane but intoxicated or insane because he was intoxicated at the time of his death. But if it follows the minority rule, the Suicide Clause excludes coverage only if he intended to commit suicide, and thus, if he could not intend to commit suicide, it does not matter whether drugs and alcohol or an organic mental condition prevented him from doing so.

7

*Acc. Co.*, 242 P. at 991. Thus, the "suicide while insane" exclusion ostensibly allowed accidental death policies to exclude coverage even if the decedent did not intend to commit suicide.

Presuming that it applies to a life insurance policy, the "suicide while insane" exclusion indicates that Colorado may follow the majority rule. Like the exclusion, the majority rule allows insurance companies to exclude coverage when a person kills himself/herself without suicidal intent. The minority rule does not.

However, the Court cannot unequivocally conclude that Colorado would follow the majority rule. In 1972, the Colorado Supreme Court indicated that a person does not commit suicide unless he/she acts with the intent to kill himself/herself. In *Lockwood v. Travelers Ins. Co.*, a widow sued to recover under an accidental death policy that excluded coverage for suicide. 498 P.2d 947, 948 (Colo. 1972). The widow and her intoxicated husband were arguing when the husband took a loaded gun from a drawer. The widow told him to put the gun away. When she turned her back, the gun discharged, the husband was shot in the head, and he died. During trial, the defendant asked the court to instruct the jury that if it found the husband "intentionally placed the gun to his head and fired the lethal shot," it must find that he committed suicide. On appeal, the court held that the instruction was not accurate because "[i]t omits any reference to the deceased's state of mind or intent at the time the gun went off." In other words, even if the husband intentionally shot himself in the head, he did not commit suicide unless he also intended to kill himself.

The holding in *Lockwood* indicates that Colorado may not follow the majority rule. Like the minority rule, *Lockwood* requires a decedent to intend to kill himself/herself for his/her death to constitute suicide. The majority rule does not.

Further, if Colorado Supreme Court follows the rationale of the Texas and Idaho supreme courts, the two courts that most recently adopted the majority rule, Colorado would likely follow the minority rule. The Texas Supreme Court reasoned,

> The difference between the [majority rule and minority rule] stems from divergent concepts of the word, 'suicide.' The majority view accepts a broad popular definition of the term as covering any act of self destruction. The minority view is essentially a criminal law or technical concept in that understanding and intent are deemed essential elements of a suicide.

*Aetna Life Ins. Co. v. McLaughlin*, 380 S.W.2d 101, 102 (Tex. 1964). Similarly, the Idaho Supreme Court reasoned,

> The divergent lines of authority stem from varying concepts of the term "suicide." The majority view adopts a plain meaning and popular definition of the term as covering any act of self-destruction. The minority views the term in essentially a criminal law or technical concept holding that understanding and intent are deemed essential elements of a suicide.

*Nielsen v. Provident Life & Acc. Ins. Co.*, 596 P.2d 95, 98-99 (Idaho 1979). According to *Lockwood*'s holding, understanding and intent are essential elements of suicide under Colorado law.

Colorado's exclusion for "suicide while insane" and the holding in *Lockwood* contradict each other. The suicide while insane exclusion allows insurance policies to exclude coverage even if a decedent did not intend to commit suicide. This is in harmony with the majority rule. However, *Lockwood*'s holding requires a decedent to intend to commit suicide for his/her death to constitute suicide. This is in harmony with the minority rule.

This contradiction must be reconciled. This Court could do so, but inasmuch as this is an unresolved issue of state law, it is proper to first give the Colorado Supreme Court an opportunity to determine whether Colorado law governing life insurance policies conforms to:

    a) The majority rule: "suicide, sane or insane" means the death is exempt from coverage if an insured engaged in self-destruction, regardless of the insured's intent or understanding of the nature and consequences of his/her actions;

    b) The minority rule: "suicide, sane or insane" means that the death is exempt from coverage only if the insured engaged in self-destruction, intended to kill himself/herself, and understood the nature and consequences of his/her actions; or

    c) Some other formulation.

## **CONCLUSION**

**IT IS THEREFORE ORDERED** that in accordance with Colo. App. R. 21.1(a), this Court certifies the following question of law to the Colorado Supreme Court:

**Under Colorado law, does a life insurance policy's exclusion for "suicide, sane or insane" exclude coverage (1) for all acts of self-destruction without regard to the insured's intent or understanding of the nature and consequences of his/her actions or (2) for only acts of self-destruction committed when the insured intends to take his/her own life or understands the nature and consequences of his/her actions?**

The Clerk of this Court shall forthwith send a copy of this certification order, certified under seal, to the Colorado Supreme Court. Pending the Colorado Supreme Court's review, the Motion to Dismiss **(# 15)** is **DENIED** without prejudice.

Dated this 29th day of March, 2017

                                          **BY THE COURT:**

                                          Marcia S. Krieger
                                          Chief United States District Judge